GEORGE KIMBALL, Plaintiff in Error,

*vs.*

## THE CITY OF KENOSHA, Defendant in Error.

ERROR TO THE KENOSHA CIRCUIT COURT.

A grantee of a lot situated in a village, plotted, laid out and recorded according to law, described by metes and bounds, bordering upon a public street, does not take by his deed a private right of way, in and over such public street, distinct from and independent of the public right of way.

A grantee of a lot bounded by a street or streets in a village, laid out, plotted and recorded in conformity with the statute, takes to the centre of the street on which the lot abuts, subject to the public easement.

The effect of the act relating to the recording of town plots in force in 1839, was, to pass an estate in all the lands designated on the plot as streets, to the corporate authorities, in trust for such uses and purposes and none other.

Where a public street in a town, plotted and recorded, is discontinued and vacated by the proper authorities, the trust of the corporate authorities for which they held the lands designated as such street, is abandoned, and such lands revert to the adjoining owners discharged from such trust.

The public authorities of a town, having discharged and abandoned the trust created by the act of recording a plot, as to the lands therein designated as streets and alleys, by vacating such public streets and alleys, are divested of all estate in the premises, and the parties are left in the position of owners of lands upon a highway that has been discontinued.

The power of the corporate authorities to absolve themselves from the trust created by the act of recording a plot, and the statute in relation thereto, necessarily results from their power to lay out, establish, alter or vacate public streets.

THIS was an action on the case for obstructing the plaintiff's way. The declaration contained four counts. Upon the two first of which a *nolle prosequi* was-entered, and to the third and fourth a demurrer was interposed. The first and second counts need not to be noticed; the following is a full abstract of the third and fourth:

*3d Count.* That whereas, to wit: October 30th, A. D. 1838, David Crosit, William Bullen and Charles Durkee, then proprietors and possessors of adjoining tracts of land, then in Racine county (now in Kenosha), laid them out in a town, surveyed and mapped them in blocks, streets, &c., and named it the Village of Southport (now a part of Kenosha city).

Block forty-five as said plot was divided into three lots, and the block was bounded on the north by Wisconsin street, sixty-six feet wide—east by Maiden Lane, sixty-six feet wide—south by South street, forty-two feet wide, and west and northwest by Exchange street, eighty-four feet wide, and forty-nine and a half feet wide at South street, where it terminates in Main street as laid on the plot.

That said lot three, in block forty-five, as laid on said plot, was bounded north by lot two, twenty-two rods and eight feet, east by Maiden Lane, ninety and eight-twelfths feet, south by South street, twenty-five rods and eight feet, and west and northwest by Exchange street, one hundred and eleven feet.

The plot was duly acknowledged, and recorded in Racine county, October 30th, A. D. 1838, where said plotted lands were then situated—and at that time, and up to the time of deeding to plaintiff, said Crosit was sole proprietor of said lot three in block forty-five, and of the spaces of land laid down as said streets next adjoining thereto.

That November 5th, A. D. 1838, said Crosit and his wife duly executed and delivered a quit-claim deed to plaintiff, of said lot three, according to said plot, conveying to plaintiff, his heirs, &c., forever, said lot, " according to said plot so made and then recorded in the office of the register of deeds of Racine county on the 30th day of October, A. D. 1838," together with the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and all the estate, &c.

Plaintiff took possession of said lot three, under said deed, November 5th, A. D. 1838. Said deed was duly recorded November 6th, A. D. 1838. That from said 5th November, 1838, to the time of the committing the grievance, &c., plaintiff was lawfully possessed of the west portion of said lot three, under said deed, containing sixty-one square rods of land, bounded on the west and northwest by said Exchange street, and south by South street, &c., and there should, and still of right ought to be, to the plaintiff, free and uninterrupted ingress and egress, by, along, &c., said space of land, called on the said plot Exchange street, next adjoining to said west portion of said lot three; and plaintiff had and still has the right of private way, appurtenant to his said premises, to use said street, for the enjoyment of said

west portion of said lot three, and its appurtenances, pursuant to said deed thereof, and said plot in said deed mentioned and referred to, and to pass along the same to and from his said lot, &c.

Yet the defendant, a corporation, &c., intending to deprive plaintiff of the benefit and use of said west portion of said lot three, and the use of, and private way in plaintiff, in said space marked on said plot as Exchange street, to wit: March 1st, 1851, wrongfully, &c., erected a certain building and fixture in said way of plaintiff, and in said Exchange street, near the south-west corner of said west portion of said lot three, and kept it there hitherto, &c.

By reason, &c., said west portion of lot three and appurtenances are injured and depreciated in value, to wit: in $1,000 ; and plaintiff and his servants hindered in passing to and from said lot over and along said way of plaintiff and said Exchange street, and is disturbed in his possession of said lot three and its way appurtenant, and in ingress and egress, to and from said west portion of said lot, and forced to pass a greater distance to and from his place of business, than he would but for said building and fixture, and is hindered, in the use of said lot, in so beneficial a manner as before, to plaintiff's damage, $1,000.

*4th Count.* That October 30th, 1838, Crosit, Bullen and Durkee, proprietors of other several adjoining tracts in Racine county (now in city of Kenosha), laid them out in a town plot, surveyed them, and made a plot or map thereof, describing blocks, streets, &c., numbered, &c., and named it, the Village of Southport, on said map.

Block forty-five, on the plot, was divided into lots one, two and three, bounded by streets (as in 3d count).

Plot was acknowledged by proprietors, and October 30th, 1838, was duly recorded in Racine county, &c.

At the time of making the plot, Crosit was sole proprietor of block forty-five, and streets so plotted thereto adjoining, and continued to own them, up to the time of conveying lot three, in block forty-five, to plaintiff.

That Crosit and wife, March 18th, A. D. 1839, deeded to plaintiff said lot three (consideration, $2,060), " according to said survey and plot, recorded, &c., together with the privileges and appurtenances thereunto belonging ;" with covenants of seizin in

fee simple, and free from incumbrance, and good right to sell the same to plaintiff, and of general warranty to defend, &c. Said deed was duly acknowledged March 18th, and recorded March 19th, 1839.

That plaintiff entered, and continues to hold under said deed, "and the right of private way of ingress and egress, over, along, by and through said streets plotted as aforesaid appurtenant to said lot, to go to and from," &c., said lot three, by plaintiff and his servants, &c., at all times under said deed to him.

Plaintiff still possesses the west portion of said lot three, described as follows, &c.; to and from which, plaintiff has in his private right, free ingress, &c., along said land plotted as Exchange street, on said map; and plaintiff is entitled under said deed and covenants as appurtenant to said lot three, to the use, and to the right of his private way, through, &c., Exchange street, for the convenient use of the west portion of lot three, to the full width of Exchange street next to said lot.

That after plaintiff acquired said title and right of ingress and egress along said street, by virtue of said deed, said lot three and streets marked on said plot, became a part of the Village of Southport, by an act to incorporate the Village of Southport, approved February 9th, A. D. 1841, and that before then, it had not belonged to any municipal corporation.

That after such incorporation, by an act of the territorial legislature passed January 11th, 1844, the president and trustees of Southport were authorized to discontinue said Exchange street, on the west side of block forty-five, and afterwards, January 17th, 1844, they did by ordinance discontinue it as a public street, and from thence, it has ceased to be a public street, for the length of 111 feet on plaintiff's northwest boundary of said west portion of lot three, and over which street plaintiff had said right of way appurtenant to his said lot three, by virtue of said deed.

That said act was passed, and street discontinued, without plaintiff's consent, and he has never surrendered his right of private way therein.

After said street was so discontinued, it became a part of the "City of Kenosha," which was incorporated February 8th, 1850.

That December 20th, 1850, said city accepted a deed of that

parcel of land, designated on said plot as "Exchange street," lying next west, and adjoining to said west portion of said lot three, being a portion of said street so discontinued as a public highway (being sixteen feet wide from north to south on Main street and eighty-three feet on South street, and bounded east by said lot three).

That the defendant entered under color of its deed, made by Volney French and wife—French and wife claiming through Henry Mitchell and wife, and they claiming through said David Crosit and wife (who are plaintiff's said grantors of said lot three), by deed, delivered November 18th, 1844, and after said Exchange street had been vacated as a public street—whereas nothing ever passed by virtue of said deeds to the defendant, impairing plaintiff's right of way, as aforesaid; but during all that time, plaintiff has had a right of way, appurtenant, by virtue of his deed first aforesaid, to said west portion of lot three, of ingress, &c., thereto, &c., over, &c., said close so deeded by Crosit to Mitchell, and from Mitchell to French, and from French to the defendant, to pass and repass to and from the same, and to and from Main street, and Wisconsin street, &c.; such close so deeded to the defendant being the identical portion of Exchange street, so mapped, lying next west and northwest of plaintiff's said west portion of lot three, adjoining to it, and which was so discontinued as a public street.

Yet defendant, a corporation, by an act approved February 8th, 1850, knowing the premises, &c., and intending to injure plaintiff, in his said west portion of said lot three, and said use of his way thereto appurtenant, to the full extent of the street plotted as Exchange street, &c., heretofore, to wit: February 1st, A. D. 1851, and after the delivery of said deed to said corporation, and not before then, wrongfully, &c., erected, &c., a fixture (particular description) *in said way of plaintiff*, in said plot designated as Exchange street, and being said close so pretended to be deeded and conveyed to defendant, and near to the southwest corner of said west portion of said lot three, and wrongfully kept it there, from thence hitherto.

By reason whereof, said west portion of lot three is injured and depreciated in value $1,000, and plaintiff and his servants, &c., are *entirely hindered and prevented* from passing to and from

said west portion of lot three, over his said way, designated on said plot as Exchange street, and in ingress, &c., to and from Main street, and Wisconsin street; and plaintiff is greatly annoyed and disturbed, in his possession of said west portion of lot three, and *in the use of his said way*, appurtenant, designated on said map as Exchange street,—and he and his servants, &c., are forced to pass a greater distance to and from said west portion, to and from their place of business, which is off of said lot three; and he is hindered from using said west portion of lot three in so beneficial a manner as before, &c., to his damage $1,000.

General demurrer to said third and fourth counts, with special causes of demurrer, assigned as follows:

" 1st. For that the third and fourth counts do not state and set forth any cause of action.

" 2d. For that plaintiff does not allege and set forth how or in what manner he had and enjoyed a special and private right of way, in a common or public street, or common or public highway.

" 3d. That said third and fourth counts are otherwise insufficient," &c.

The court below sustained the demurrer, and rendered judgment against the plaintiff, to reverse which this writ of error is brought.

Conceiving the principles of law involved in this case to be of very great interest and importance, and in order to be enabled. to settle them correctly, the court ordered a re-argument. It is deeply regretted that the restrictions imposed upon the reporter, prevent him from inserting the elaborate briefs of counsel, and the mode of illustration and argument in which they were presented.

*Stoddard & Petit*, for the plaintiff in error.

*E. W. Evans*, for the defendant in error.

*By the Court*, SMITH, J. The great practical importance of this case, has induced the court to require an unusual labor of argument on the part of counsel, and it is needless to say that it has received all the consideration which we have been able to give

it. It remains now only to state briefly the conclusions to which we have arrived.

The authorities to which reference has been made, as bearing upon the case, are numerous, and by no means uniform, hence an attempt to review them on this occasion, would require great labor, and would result in but little practical benefit.

The declaration is an action on the case for obstructing the plaintiff's right of private way, setting forth at length, the facts from which he avers this right of private way to have accrued to him, and the means by which the defendant is charged with having obstructed the same. These facts inform us that about the 30th day of October, 1838, David Crosit, William Bullen and Charles Durkee, then proprietors of adjoining tracts of land lying in Racine, (now) Kenosha county, laid them out in town lots, surveyed and mapped them in lots, blocks, streets, &c., naming the tracts of land thus plotted "the village of Southport," now known as the city of Kenosha. Among the blocks thus marked on the said map (which was duly acknowledged and recorded in pursuance of the then existing statute) was one numbered forty-five, which was divided into three lots, numbered numerically in their order. Said lot three, in block forty-five, was bounded on one side by a street called Maiden Lane, on another side by South street, and on another side by Exchange street. November 5th, 1838, Crosit, who theretofore was the owner of said lot three, together with his wife, conveyed the same by deed, according to the plot so made, to the plaintiff, under which the plaintiff went into possession, and has so remained ever since. February 9th, 1841, said village was incorporated by act of the territorial legislature. Afterwards, by an act of the legislature, approved January 11th, 1844, the trustees of Southport were authorized to discontinue said Exchange street, and on the 17th day of January, 1844, the said trustees did, by ordinance, discontinue and vacate the same as a public street on the west side of said block forty-five, and for the length of 111 feet on the west and northwest of said lot three. On the 20th day of December, 1850, Volney French and wife conveyed to the city of Kenosha a portion of said Exchange street so discontinued, west and in front, adjoining said lot three (French deriving title through mesne conveyances from Crosit, the grantor

of the plaintiff), who, by its officers and agents, afterwards erected thereon a certain fixture (an engine-house), and still keep and maintain the same.

The plaintiff claims that by virtue of his deed from Crosit and wife, he acquired a right of way in and over said Exchange street, and that his private right of way in and over said Exchange street, continued after, and notwithstanding the discontinuance of said street as a public way, independent of, and distinct from the public right, as appurtenant to the land which he purchased from Crosit, described by reference to the recorded plot or map aforesaid.

To the declaration of the plaintiff the defendant interposed a demurrer, which was sustained by the court below, and judgment was entered for the defendant.

The view which we have taken of this case, and of the rights of the respective parties involved, renders it unnecessary to discuss some of the causes of demurrer assigned. The whole case depends upon the questions: 1. Did the plaintiff acquire any interest in the strip of land designated on said plot as Exchange street, by virtue of his deed from Crosit and wife, and if any, what interest did he thus acquire? and 2. Does the plaintiff's declaration properly state his right, and the injury committed by the defendant?

All the facts well pleaded in the plaintiff's declaration are admitted by the demurrer. He has properly set out the original proprietorship by Crosit of lot three; the survey, plotting and recording of the village plot of Southport; the conveyance of said lot three to himself by Crosit and wife; and its boundaries upon certain streets, one of which is Exchange street; the discontinuance of said street by the corporate authorities of the village under special authority conferred by the legislature; and the erection of the fixture (the engine-house), and the maintaining of the same by the defendant.

It is obvious, therefore, that the inquiry is very considerably narrowed. Has the plaintiff properly stated his right and the injury thereto, as both are manifested by his count? We think not. It does not appear that he took by his deed a private right of way in and over Exchange street, distinct from, and independent of, the public right of way. It is not denied that such

a right may be conveyed by similar conveyances of town lots, in cases where no other means of access exist; nor is it affirmed, in exclusion of the right of the public authority to extinguish the private, with the public right of way, by vacating the street. It is possible, perhaps, that such a case may arise, and when it does, it will be met and disposed of; but under our view of the legal rights of the parties, in such cases, it will not be very likely to become a matter of serious litigation.

The statute in force at the time when the plot of the village of Southport was made, was that of Michigan, differing only in one respect from our own now in force, and from a proper construction of which are the rights of the parties to be ascertained and determined. Section 2 of chapter 41 of the Revised Statutes (substantially like the statute of Michigan, under which the plot was made) provides as follows:

"All lots intended for sale shall be numbered in progressive numbers, or by the squares in which they are situated, and their precise length and width shall be stated on said plot or map; and out lots shall not exceed ten acres in size, and shall in like manner be surveyed and numbered, and their precise length and width stated on the plot or map, *together with any streets, alleys or roads which shall divide or border on the same.*"

Section 5 of the same act provides as follows:

"When the plot or map shall have been made out and certified, acknowledged and recorded as required by this act, every donation or grant to the public, or any individual or individuals, religious society or societies, or to any corporation or bodies politic, marked or noted as such on said map, shall be deemed in law and in equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against such donor or donors, their heirs and representatives, to the said donee or donees, grantee or grantees, for his, her or their use, for the uses and purposes therein named, expressed and intended, and no other use or purpose whatever; *and the lands intended to be for streets, alleys, ways, commons, or other public uses, in any town or city, or addition thereto, shall be held in the corporate name thereof, in trust to, and for the uses and purposes se forth and expressed or intended.*"

Were it not for this statute, the deed of Crosit would have conveyed to the plaintiff the fee of the land to the centre of the street, subject to the public easement. This is the uniform doctrine in regard to roads and streets, or lands bounded thereon, in the country, and in villages. 11 *Barb. S. C. R.*, 414–451; 24 *Wend.* 451; 13 *Conn. Rep.* 23; 4 *Day*, 328; 2 *Wend.* 473; 1 *Comst.* 103, *and cases there cited.* Southport was an unincorporated village at the time of the conveyance by Crosit to the plaintiff, and the common law prevailed, except so far as it was modified by the statute then in force as above recited. The effect of this statute was, to pass a trust estate in the land designated as streets, to the corporate authorities, or rather, as the Michigan statute provided, to the county commissioners. But the fee, if it can be so called, was a qualified one. The estate so conveyed was a trust estate, to be *held* for a particular, specified use, and no other. This estate, by the statute, vested upon the recording of the plot, so that the proprietor was inhibited from resuming, or, rather, from otherwise disposing of the estate or use of the land thus designated as streets on the plot so recorded. But no one can suppose that the corporate authorities did thereby acquire such an interest or estate in the lands so designated as streets, as to enable them to divert the same from the use declared by the statute. These corporate authorities, from the time of recording the plot, took the qualified estate prescribed by the statute, and held the same for the use therein specified, for the benefit of all those who should purchase lots, from time to time, as well as for the public generally.

But though the corporate authorities of the town took the estate in trust, for the specified use of the public and the lot owners, it cannot be admitted that the right of eminent domain in the state, or in the municipal corporation to which the same might be delegated, was thereby at all impaired. The proper authority acting in the name and power of the state, could at any time abandon such trust, by vacating the street, taking the private interests and estates therein upon making compensation, the same as in the laying out and establishing a new street. In this way the public easement could be abandoned, and the private right extinguished. The land, discharged from the public easement, and the trusts to which it had been subjected, would revert to

Kimball vs. The City of Kenosha.

the original proprietor, or his grantee or grantees. The public authorities having extinguished the trust created by the act of recording the plot, were divested of all estate in the premises, for they never had any other, and the parties would be left in the same position as that of the owners of land upon a highway that had been discontinued by the proper authority. (See authorities before cited.)

The chief difficulty in the way of this course of procedure is, the question, whether it is competent for the corporate authorities to absolve themselves from the trust created by the act of recording the plot and the statute in relation thereto. But it seems that this power necessarily results from their power to lay out, establish, alter or vacate public streets, which power is as ample as the state itself could confer, indeed scarcely limited at all save by the prescriptions of the constitution.

There can be no real difference between a conveyance of a lot or block numbered three, which is in fact bounded by a street, or in the conveyance of black-acre bounding it by a street or highway named. Unless the street or road is expressly excluded, the grantee takes to the centre. It is unnecessary to cite authorities to this proposition. The dividing of land into lots, blocks and streets, the lots and blocks numbered, and all bounded by streets in fact, and described in the deeds of their conveyance by number, cannot, by any means, be regarded as an express exclusion of the streets on which they abut, and without which the lots would be comparatively useless. So far from the streets being expressly excluded in conveyances of such kind, there is the strongest possible implication that they were intended to be included, because the price of the lots depends upon their location in reference to the streets, and the vendor receives a consideration, not only for the precise amount of land described in the lot, but also for that used for the street on which the lot is bounded. Admitting, therefore, that the corporate authorities may discontinue the public use of the street, as it appears to us, must of necessity be the case, subject to constitutional restrictions, the plainest principles of equity, as well as the long settled principles of the common law, require that the street thus vacated for the public use, should revert to the adjoining land owners.

We are aware that these views may, in some degree, conflict

with the reasoning of the New York courts, in regard to streets in New York city, in reference to a statute somewhat analogous to our own. But we are unacquainted with all the facts and circumstances which may have dictated the policy of their law, or guided the minds of their jurists to conclusions, doubtless satisfactory to them and beneficial as well as just to their state and people, but we have been unable to discover anything in the rule, or the reason of the rule, established for New York city, approaching the character of universal law, or authoritative precedent, or which would render it either a wise or safe one to be adopted in this state. On the contrary, the rule which we have been constrained to adopt, or rather to follow, in this case, we believe to be, not only in strict conformity with well established existing law, sanctioned by the experience and authority of ages, but the only one that will secure the just rights of the public and of individuals, and close the door to an endless train of litigation.

It will be seen that the plaintiff has not properly stated his right, the injury to which, he complains of, and the demurrer should be sustained.

It is not intended to decide, or to intimate, that these principles apply to public squares, &c., but only to streets, alleys and the like.

We have not stopped to quote authorities for the several positions here assumed, as they rest mainly upon elementary principles, conceded by all, a departure from which only requires cases and precedents to sustain it.

Sufficient, however, has been referred to (if indeed any authority were at this day requisite), to establish these principles in relation to lands in the country and in villages, and neither the statute of Michigan, the statute of the territory, nor the existing statutes of this state, essentially vary or change the application of the same principle to town or city lots. The public authorities have all the control over the streets which the statute grants to them, so long as the streets are continued as such; and when they cease to be such, are vacated or abandoned, the rights of the public therein are extinguished, and those of the individual owner may be resumed.

It may not be improper to remark, that the New York decis-

ions have had, as they justly should have, very great weight ; but it should also be observed that the statutes of that state are peculiar, as may also have been the circumstances, interests and public policy necessary to be established by them.

It would seem, moreover, as an indication of the intent of the legislature, or at least as indicative of legislative construction, that we are not alone in this view of the proper construction to be put upon the statutes before referred to.

It was our design to enlarge considerably on this opinion, and to elaborate more at length the conclusions to which we have arrived. To do so, would be to swell the opinion to an unusual compass. We cannot but feel that injustice has been done to the very able, consecutive and logical arguments with which we have been favored on both sides of this important question. But we have tried to reach the principles involved, and settle them so far as we have been able. We shall content ourselves with the citation of the recent act of the legislature bearing upon this subject.

The legislative construction to which we refer is found in the act entitled, "An act to amend chapter forty-one of the Revised Statutes," and is as follows:

"That chapter forty-one of the Revised Statutes be, and the same is hereby amended, by adding to the said chapter, as section fifteen, as follows, to wit: If the owner or owners of any addition to any city or town, not within the municipal jurisdiction of any such city or town, shall be desirous of altering or vacating the same, or any part thereof, in addition to the notice prescribed in section 13, they shall also give two weeks' previous notice, in writing, to such town or city, of the time and place at which such application shall be made to the court, and upon producing satisfactory evidence to the court, that such notices have been given, the court shall proceed to hear and determine such petition, and may alter or vacate such addition or any part thereof, and by decree direct that the title to such portions of such addition as may be vacated, be vested in the owner or owners of the lots or lands abutting on, or adjoining the portions so vacated, to each, from the line of his or their lot of land, to the centre of the portion so vacated, in such proportions as may be determined by the court; and that the decree so made, together with a plot

of the same shall have been altered, shall be recorded in the office of the register of deeds for the proper county, in the same manner as is provided in the said chapter for recording plots."

The provisions of this amendatory act, would seem to imply, that upon the vacating or discontinuing of a street, under the circumstances analogous to those involved in this case, the present owners of the lots abutting on the streets so vacated should take the land to the centre of the street.

We will not undertake to say, nor are we called upon to do so, what would, or should have been the rule of decision, had our statute given the unqualified fee of the land of the streets to the corporate authorities, unaffected or unrestricted by any trusts whatsoever. We consider the rights of all the parties concerned, as their acts and the operative statutes at the time fixed them, modified only so far as a subsequent, and not materially different statute, may have affected them.

The judgment of the court below, sustaining the demurrer, must be affirmed, as the plaintiff has not, in his declaration, properly set out his right or title, nor the nature of the injury of which he complains.