## WILLIAMS and others vs. SMITH and others.

*Dedication by plat.—Injunction against public nuisance at the suit of individuals specially injured.*—PLEADING.

1. Where land was designated by the proprietors as a "Public Square" on a town or city plat duly certified, acknowledged and recorded under the Territorial Statutes of 1839, the title was thereby vested in the corporate authorities of such town or city, in trust for the use indicated.

2. An action to restrain the erection of buildings, etc., upon such land by private persons claiming title to it, may be maintained by adjacent lot owners, whose access to their lots would be cut off by the erection of such buildings.

3. Whether the municipal corporation could properly join in the action, not determined here, no objection to such joinder having been taken in the court below.

4. The charter of the *city* of Janesville (in 1858) provided that the common council should have power to accept, by order or resolution, any street or highway in the original plat of the *village* of Janesville, or any recorded addition thereto; that such acceptance should make the same a highway; that until such acceptance, the city should not be liable for the unimproved condition of such street or highway; also that the council should cause all streets, highways, public squares, etc., in said city

to be surveyed, described and recorded, and such record should be *prima facie* evidence of the facts therein described, in all actions between the city and other persons touching their location. *Held*, that where land had been dedicated as a public square in said *village*, under the territorial statute, the omission of the city council to survey and record it did not destroy the rights of adjacent land owners in the same as public grounds, nor even the rights of the city, as against the original proprietors.

5. Certain averments in the answer, when taken together, *held* to be not a denial but an *admission* of allegations in the complaint.

APPEAL from the Circuit Court for *Rock* County.

This action was brought by the *City of Janesville, Randall Williams, David W. Inman* and several others. The relief sought was, that defendants, etc., might be perpetually restrained from erecting or continuing any building on the premises described in the complaint and alleged to have been dedicated to the public use as a "public square;" that buildings already placed thereon by defendants might be removed; that *Smith* might be perpetually restrained from leasing any part of said premises; and that the same might be adjudged to be a public square. The substance of the pleadings is stated in the opinion. The circuit court, upon the pleadings alone (after denying a motion to dismiss the complaint as to all the plaintiffs except the city), rendered judgment for the plaintiffs, granting the relief sought; from which the defendants appealed.

*A. Hyatt Smith* and *Moses S. Prichard*, with whom was *Matt. H. Carpenter*, of counsel, for appellants, contended that the premises were not public ground of the *City of Janesville*, because never accepted by the common council, nor surveyed, described and recorded, as provided by secs. 1 and 3, ch. 6, of the charter (Private Laws of 1858, p. 232), as amended by ch. 153, Private Laws of 1860.* This referred

---

* The provisions of the charter here referred to are as follows: Sec. 1

it to the common council to determine how many of the so-called public squares, streets, etc., it would recognize as being such, and imposed on it the duty of surveying, describing and recording such as it determined to recognize. The refusal of the council to make such an appropriation was an abandonment of the property as public ground, and equivalent to a vacating of the same by legal means. At all events, this is conclusive against the city itself. It can not claim to be relieved from liability to keep the ground in repair because not made public ground in the manner provided by the statute, and yet restrain defendants from building on it because it *is* public ground. 2. The remedy for a public nuisance is by indictment or other proceeding on behalf of the state. Neither the city nor an individual can maintain this action, unless it is shown that the act

provides that the common council "shall have full control and power over and management of all streets, alleys, lanes and *public grounds* in said city, and shall have *power to accept*, by order or resolution, any street, lane, highway or alley in the original plat of the village of Janesville, or any recorded addition thereto, and to establish the grades of all such streets, lanes, highways, alleys or public grounds, and *such acceptance shall*, to all intents and purposes, *make such street, lane, highway or alley, a highway;* and until the common council shall have accepted any street, lane, highway or alley as hereinbefore provided, which has not been improved by order of the common council, the city shall not be liable for any damages resulting from the unimproved condition of said street, lane, highway or alley," etc. Sec. 3. "The common council shall cause all streets, highways, alleys, lanes, side and cross-walks, culverts, drains, sewers, *public squares and grounds* in said city to be surveyed, described and recorded in a book to be kept by the city clerk for that purpose, and cause maps thereof to be made and filed with the clerk. Such record and maps shall be *prima facie* evidence of the facts therein described and portrayed in all actions between the city and other persons touching their location." The complaint does not allege that the land in question has been surveyed or recorded by order of the council. The answer avers that it was never intended to make it public ground, and that *Smith* has remained in exclusive possession, treating it as his private property, ever since the first plat was made.—REP.

complained of causes some *special* injury to the plaintiffs. *City of Georgetown v. Canal Co.*, 12 Pet., 97, 98; 10 Pa. St., 64; *Bridge Co. v. Smith*, 30 N. Y., 44, 62, 63; *Harrower v. Ritson*, 37 Barb., 301; *Rogers v. Barker*, 31 id., 447; *Clark v. Syracuse*, 13 id., 32; *Smith v. Lockwood*, id., 218; *Badeau v. Mead*, 14 id., 329; 2 Blacks. Com., 219; Broom's Com., 250; Phear's Rights of Water (27 Law Lib., 6th series), 70. No. pretense of any such special injury is made on the part of the city; and the answer denies all the facts on which the claim of special injury to the other defendants rests. 3. The judgment in favor of the city is erroneous, even if the other defendants might have maintained the action in their own names.

*Sleeper & Norton*, for respondents.

Cole, J.   The object of this suit is to restrain the defendants from occupying or placing buildings or other structures upon a certain piece of ground within the corporate limits of the city of Janesville, claimed to be a "public square;" and also to have the said piece of ground declared to be a "public square," dedicated to public use as open ground or a common.   The action is brought by the *City of Janesville* and certain persons who are the equitable owners and in possession of lots adjoining the public square, who insist that the ground shall be kept open for their benefit, and because it furnishes the only way of access to their premises fronting on the public square on Milwaukee or Franklin streets.

We are entirely satisfied from the matters stated in the complaint, and which are either expressly or impliedly admitted in the answer, that the piece of land described in the pleadings was dedicated as a public square by the original proprietors, in 1844.   The complaint alleges that the owners of lots two and three caused the same to be surveyed

and platted into a town plat, under the name of "Smith, Bailey and Stone's Addition to the town of Janesville;" and that this plat was duly certified, acknowledged and recorded, August 31st, 1844. And it appears that there was upon this plat a piece of ground, triangular in shape, which was designated and marked as a "public square," and further designated on the plat as "being that piece of land bounded by Milwaukee and Franklin streets and the Madison road." There is some controversy as to the extent of this public square; but that a piece of ground was laid out and marked upon the plat as a "public square," must be conceded. By the statute in force at the time this plat was made (Statutes of the Territory of Wisconsin, 1839, p. 160, § 5), it is provided that when a plat has been made out, certified, acknowledged and recorded as required therein, every donation or grant to the public, marked or noted as such on the plat, should be deemed in law and equity a sufficient conveyance to vest the fee simple of such parcel of land as was therein expressed, and should be considered to all intents and purposes a general warranty against the donor and his heirs, and to the said donee for his use and for no other purpose whatever; and that the land intended to be for the streets, commons, or other public uses in any town or city, should be held in the corporate name thereof, in trust to and for the uses and purposes therein set forth and expressed or intended. Now the admitted facts of the case, as we think, show a sufficient dedication of the "public square," under the statute. It is true, the answer denies that there was any dedication of this piece of land to the public use; but it is apparent that this denial must be weighed in connection with facts not denied, and which show what was done by the original proprietors. And when those facts are considered, they establish beyond all doubt the proposition that there was a

good and valid dedication of this triangular piece of ground to the public use.   This being so, it is very evident that the dedication is binding upon the proprietors, who cannot withdraw the property from public use, nor exercise any control over it inconsistent with the purposes to which it was originally devoted.   See the case of *Gardiner v. Tisdale*, 2 Wis., 153, and authorities there cited; also Washburn on Easements, chap. 1, sec. 2.   So that, although the answer denies the existence of the public square, and alleges that there was no intention to dedicate it to the public use, still this cannot overcome the legal effect of the acts of the proprietors.   And the only conclusion which can be drawn from these acts, as detailed in the pleadings, is, that they amounted to a valid dedication of the " public square," binding upon the parties.   This conclusion is further strengthened by the consideration that the plaintiffs, who have united with the city in bringing this action, are the equitable owners and in possession of a piece of land bounded on one side by the public square, and claim title or right to possession through Smith, Baily, and one McCherg under a contract for a conveyance, in which this triangular piece of ground is described as a "public square."   Certainly it seems very inequitable to permit the proprietors to resume the land marked upon the recorded plat as a "public square," after individuals had purchased of them lots fronting the square under the expectation that it was to remain an open ground or common, and the proprietors had so designated it in their contracts.

But it is said, the *City of Janesville* has abandoned the property as a public square, by neglecting or refusing to survey, describe and record the same as required by the provisions of the amended charter.   It appears to us, however, that no such consequence as an abandonment of the public square for public use can be assumed to follow from

the failure of the city to comply with these provisions in respect to surveying, describing and recording in a book the public square. The city, by the charter of 1853 (Pr. Laws of 1853, chap. 93, sec. 15, page 235), became the lawful owner of all property donated to the public by the original recorded town plat of the village; and it would be most unreasonable to hold that by the mere omission of the city to again survey and record this public square, the public user in the same was abandoned and lost, and the land reverted to the original owner. No such result can fairly be said to follow, not even as against the city itself. And here the adjoining lot owners are interested in having the public square actually applied to the use to which it was originally devoted by the proprietors.

But it is further insisted that, conceding the square to be public property, still the plaintiffs cannot maintain an action to restrain the defendants from erecting buildings upon the same. It is said that occupying the square with such structures would be a public nuisance, and that the remedy to abate it is by indictment. In the case of *The Trustees of the Village of Watertown et al. v. Cowen et al.*, 4 Paige, 510, Chancellor WALWORTH held that where lands are dedicated to the use of the inhabitants of an incorporated village or city for a public square, a bill might be filed in the name of the corporation to restrain the erection of a nuisance thereon, or to protect the equitable right of the corporators to the use of the public square as such; and that the owner of a lot adjoining the square, who was specially injured by the nuisance, might unite in the action. In addition to the authorities there referred to, see *Commonwealth v. Rush*, 14 Pa. St., 186; 2 Story's Eq. Jur., § 927. The facts stated in the complaint show very clearly that the persons uniting with the city in bringing this suit would sustain an injury from obstructing the public square not common to

the rest of the community. For their means of ingress and egress to and from their property across the public square would be effectually destroyed if that space were filled up with buildings. They therefore sustain a special injury peculiar to themselves, and might maintain an action to prevent any one from occupying the square with such obstructions. And the authorities are numerous to the effect that where the nuisance is specially injurious to the rights and interests of individuals, producing irreparable injury to their property, courts of equity will interfere by injunction to remove it. The chancellor sustained a bill to perpetually enjoin persons from building upon the public square, brought by the corporation and an owner of a lot adjoining the square, in the case just cited. And the jurisdiction seems to be well established, that a court of equity will interfere to prevent a nuisance, even though in a certain sense public in its character, where the party asking relief sustains some special and private injury from the existence of such nuisance.

Upon the point whether there was an improper joinder of the city with the other parties plaintiff, it is, of course, too late to take that objection here for the first time.

We have had some doubt whether the persons uniting with the city as plaintiffs showed such clear right or title in the premises mentioned in the complaint, as to entitle them, in view of the matters stated in the answer, to the relief sought; or whether they should not have offered evidence to sustain the allegations of the complaint upon that point. The answer, at first sight, would seem to put in issue the plaintiffs' title; but it is doubtful if it does so. The complaint alleges that they are in possession by their tenants of the premises, and own the same, stating how they derived title. The defendants aver that they have no knowledge or information to form a belief as to the rights of the plain-

tiffs under the Van Antwerp contract. But possession and ownership in the land are not distinctly denied. And in other parts of the answer it is admitted that the plaintiffs have buildings fronting on the triangular piece of ground which is claimed to be a public square, and it is alleged that these buildings encroach upon the square or Madison road. Thus it is admitted that they own these buildings and are in possession of them. For the purpose of having access to those buildings, they have a right to insist that the square dedicated to the public shall be kept open for their benefit. See *Blunt v. McCormick*, 3 Denio, 283; and *Crommelin v. Coxe*, 30 Alabama, 318.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.