Pettibone and others vs. Hamilton and another.

## PETTIBONE and others vs. HAMILTON and another.

HIGHWAYS: *(1, 6) Dedication by plat. (2-5) Rights of abutting proprietors. (7) Vacating highway; statute must be pursued.*
INJUNCTION: *(8) Against obstruction of public way. (9) Allegation of special injury to adjoining land-owners. (10) Owners in severalty may join.*

1. The recorded plat of a village block showed, between two tiers of lots, a space thirty feet wide, the east ten feet of which was marked as an alley, and the west twenty feet with the name, "Darling Place." Between the two was drawn a heavy line, and dotted lines were extended across the ends of "Darling Place." The certificate indorsed on the map recited that "the alley in the rear of the front [eastern] lots is for the accommodation of said lots, and the court shown as "Darling Place" is given as a public promenade for foot people, but not to be opened for teams or cattle." *Held*, that, by the recording of such plat, both the alley and Darling Place became *public ways*, though with certain restrictions.

2. It is the settled doctrine in this state, that the grantee of a lot in a recorded plat, except where the terms of his deed or the plat expressly exclude that construction, takes to the centre of adjoining public ways, subject to the public easement; and the fact that the description in his deed, after stating the number of his lot, gives its dimensions as they are exclusive of the highway; does not affect the construction.

3. This doctrine applies in favor of one who took a deed describing land only by metes and bounds, such as afterward formed the boundary of a distinct lot, exclusive of public ways, upon a plat subsequently made and recorded by his grantor.

4. In this case, the grantees of the eastern tier of lots took *at least* to the western line of the alley (*Mariner v. Schulte*, 13 Wis., 692). Whether they took the fee of any portion of "Darling Place," not determined.

5. After conveying all the lots in both the eastern and western tiers, the proprietors had no title to or interest in said alley or "Place."

6. While the recorded plat, and the conveyance of lands with reference to it, constitute, as against the proprietors, a valid dedication to the public use of the land marked as public ways, without any formal acceptance by the public, the question whether such acceptance is necessary to render the municipality liable for damages resulting from their want of repair, is not here decided.

7. Where a city charter empowers the common council to vacate a public highway "upon petition in writing of two-thirds of the owners of lots" thereon, such petition is essential to the jurisdiction.

8. It is the settled law of this state, that an obstruction which prevents a lawful use of a public highway, besides being a public nuisance, is a special injury to adjoining lot-owners, against which, when threatened, they may have an injunction.

9. An averment by such lot-owners that such obstruction will greatly diminish the value of their said. lots and buildings, and will greatly increase the liability of said buildings to fire, and will otherwise greatly injure their said property, is a sufficient allegation of special injury.

10. The fact that plaintiffs own severally, and not jointly, the lots and buildings specially injured by the obstruction, will not prevent their joining in an action to restrain it.

APPEAL from the Circuit Court for *Fond du Lac* County.

This action was brought to perpetually restrain the defendants from closing up or building upon a strip of land in the city of Fond du Lac, known as "Darling Place." A temporary injunction to that effect was granted. The defendants moved upon the complaint, answer, and certain affidavits, to dissolve such injunction. On the hearing, plaintiffs read additional affidavits in opposition to the motion.

The pleadings and affidavits show the following facts: In May, 1864, Dr. Mason C. Darling, who was then the sole owner of block C in Darling's addition to the village of Fond du Lac, conveyed to the plaintiff *Sander*, by metes and bounds, the tract of land which constitutes lot 5 in the recorded subdivision of said block C. (See the copy of such recorded plat herewith printed.) On October 20th, in the same year, Darling conveyed to one Benjamin Mason, by like description, the tract which constitutes lot 1 thereon. He also conveyed what constitutes lot 11, by like description, to one Henry P. Brown, October 25, 1864, but reserved in the conveyance thereof "the right to plat and record the subdivision of said block C, and showing the lot therein described, without changing the size or dimensions." In each of these conveyances the tract conveyed is specified to be 115 feet deep from Main street west.

October 28, 1864, the above plat, executed by Darling,

Pettibone and others vs. Hamilton and another.

Mason and *Sander*, was recorded in the office of the register of deeds of Fond du Lac county, with the following certificate thereon: " We, the undersigned, owners in severalty of the lands embraced in block C, Darling's addition to the village of Fond du Lac, have caused the same to be subdivided into lots with a court or place and an alley, as shown hereon. The alley in rear of the front lots is for the accommodation of said lots, and the court shown as 'Darling Place' is given as a public promenade for the foot-people, but not to be opened for teams or cattle; and we have set stone monuments as are located upon the map."

After the recording of such plat, some of the lots were conveyed by the numbers thereof on the plat, and others by numbers and dimensions. In the latter class, the depth of the lots is uniformly stated to be 115 feet. Each plaintiff is the owner in severalty of one of these lots, or of a portion of one of them, by mesne conveyances from Dr. Darling, or his heirs, or from Mason. Buildings have been located on nearly all of these lots, which seem to be occupied mainly for stores.

Also, by mesne conveyances from Dr. Darling, the defendants are, and since before June 18, 1874, have been, the owners of the tract of land in said block C, abutting upon " Darling Place" on the west, together with all the interest and title of Dr. Darling in and to said " Place" and the adjoining alley.

June 18, 1874, the defendants petitioned the common council of the city of Fond du Lac to vacate " Darling Place," and such proceedings were thereupon had, that afterwards, and before this action was commenced, the common council passed an ordinance or resolution granting the prayer of such petition. Those proceedings subsequent to the petition seem to have been in strict accordance with the requirements of the charter of said city.

It should also be stated that, after said plat was recorded, Dr. Darling made or continued a fence around " Darling

Place," leaving a narrow opening therein at each end of the "Place," only sufficient to admit one person at a time, and laid down a walk four or five feet wide through the "Place," along the west side thereof. From the recording of the plat until November, 1874, the "Place" was constantly used by the public as a footway.

After the passage of the ordinance purporting to vacate the same, the defendants took up and carried away the walk from "Darling Place," and closed the openings in the fences at the ends thereof, and when the injunction order was served upon them, were about to erect a brick building in said "Place," fronting on Forest street, which, if erected, will permanently and totally obstruct and prevent the use of the "Place" as a footway.

The defendants appealed from an order refusing to dissolve the injunction.

Two briefs were filed in this case for the appellants, one signed by *E. S. Bragg* as their attorney, and the other by *Taylor & Sutherland,* of counsel. For the respondents a single brief was filed, signed by *J. W. Bass* as attorney, and by *L. S. Dixon,* of counsel. The cause was argued orally at the August term, 1875, by *E. S. Bragg* for the appellant, and *L. S. Dixon* for the respondents; and reargued at the January term, 1876, by *E. S. Bragg* and *David Taylor* for the appellant, and *L. S. Dixon* for the respondents.

*E. S. Bragg,* for appellant, argued: 1. That plaintiffs had not shown any special injury common to them all, entitling them to any common relief in equity. *Milhau v. Sharp,* 27 N. Y., 625; *Hudson v. Maddison,* 12 Sim., 416; *Jones v. Del Rio,* 1 Turn. & Russ., 297; Story's Eq. Pl., § 279; *Hinchman v. Patterson R. R. Co.,* 17 N. J. Eq. (2 C. E. Green), 76; *Marselis v. Morris Canal Co.,* Saxton, 31. 2. That plaintiffs' deeds, as well as the language of the plat, showed an intention to confine them within a depth of 115 feet east from Main street; that they acquired, therefore, only an easement

in the alley, the fee remaining in the proprietor of the plat; that they owned, consequently, no land abutting upon "Darling Place," and had no interest therein sufficient to enable them to maintain this action ( *Weisbrod v. Ch. & N. W. R'y Co.*, 18 Wis., 44; 21 id., 602; Tay. Stats., 774, § 5; *Kimball v. Kenosha*, 4 Wis., 321; *Howard v. Rogers*, 4 H. & J., 278; *People v. Kerr*, 27 N. Y., 188); that there was here no question of implied covenants, which distinguished the case from *Fisher v. Beard*, 32 Iowa, 346; *Tallmadge v. East Riv. Bank*, 26 N. Y., 105; *White v. Flannigain*, 1 Md., 525; and *Williams v. Smith*, 22 Wis., 594; that the land in controversy never became a public way, there having been no acceptance by the proper authorities of its dedication, and, even if it did, it had been regularly vacated, and the land thereupon reverted to defendants, the grantees of the original proprietors. *State v. Joyce*, 19 Wis., 90; Cooley's Con. Lim., 207, note; *State v. Graves*, 19 Md., 351; *People v. Kerr*, 27 N. Y., 192; *Kimball v. Kenosha*, 4 Wis., 321; P. & L. Laws of 1868, ch. 59, sec. 1.    3. That the complaint did not show such a case of special damage as would support an action of this nature by a private individual.    2 Daniell's Ch. Pr. (4th Am. ed.), 1676, note 4; *Janesville Bridge Co. v. Stoughton*, 1 Pin., 673; 2 Story's Eq. Jur., §§ 924, 925, 928, with notes; *Att'y Gen'l v. Nichol*, 16 Ves., 338; *Earl of Ripon v. Hobart*, 3 Myl. & K., 169; *Wynstanley v. Lee*, 2 Swans., 333; *Stuber's Road*, 28 Pa. St., 201; *Phil. & Trenton R. R. Co.*, 6 Whart., 45, 46; *Hoag v. Switzer*, 61 Ill., 294; *Stetson v. Railway*, June Term, 1875, Ill. Sup. Ct.; *Richardson v. Vt. Cent. R. R.*, 25 Vt., 472; *Eaton v. B. C. & M. R. R.*, 51 N. H., 504.    4. That plaintiffs have an adequate remedy at law.

The brief of *Taylor & Sutherland*, as to the necessity of an acceptance to make a dedication effectual, and as to the power of the state to vacate without making compensation, cited the following additional authorities:  *Gardiner v. Tisdale*, 2 Wis., 153; *Milwaukee v. Davis*, 6 id., 377; 26 Iowa, 387; 7 Phila.,

359; 4 Green (N. J.), 355; 43 Pa. St., 486; 24 id., 207; 28 id., 199; 47 id., 329; 20 Mich., 95; 4 Cow., 543; Cooley's Con. Lim., 208, 384; 11 Gray, 26; 7 Cush., 254; 1 Pick., 418, 432; 11 Met., 525; 1 C. B. (N. S.), 238; 2 Macqueen, 229. To the point that the granting of a right of way did not pass the fee, and that the owner of the fee, when the street was vacated, became entitled to the possession, they cited 9 Allen, 159; 13 id., 152; 97 id., 475; 6 id., 454; 8 Met., 267; 2 Gray, 273; 3 id., 319; 99 Mass., 285; 21 Pick., 292; 1 Cush., 292; 53 N. Y., 44; 8 N. H., 96; 38 id., 213; 44 id., 462; 1 Conn., 103; 5 Jones' Law, 63; 15 Johns., 452; 2 id., 363; 6 East, 154; 8 Am. Rep., 326; 8 Bosw., 357; and as to the right to contradict by evidence the presumption in favor of a grantee of land bounded by a public highway, 18 Wis., 35; 5 Conn., 310; 2 Sandf., 234; 1 Sim., 31, 32; 20 Wend., 96; 7 Barn. & Cress., 308; 46 Barb., 601; 22 id., 436, 487; 8 Bosw., 357; 5 Whart., 28; 15 Johns., 453. They further argued that the general allegations of injury in the complaint were not sufficient (*Carlisle v. Stevenson,* 3 Md. Chanc. Dec., 499, 505; *Amelung v. Seekamp,* 9 Gill & J., 468; 7 Johns. Ch., 315; 1 McLean, 360; 2 Wis., 153; 7 id., 85; 30 id., 62); that as the injury was denied, and the damage shown to be at least not irreparable, an injunction should be refused (28 Wis., 583; 26 id., 67; 21 id., 667; 32 id., 299; 5 Met., 8, 118; 38 Pa. St., 76; 57 id., 105; 37 N. H., 254; 16 Ves., 338, 342; 2 Am. R. R. Cases, 577; 2 Allen, 211; 3 Johns. Ch., 282; 7 Bosw., 649; *Thornton v. Grant,* 10 R. I., 477; *Bigelow v. Hartford Bridge Co.,* 14 Conn., 565; *London & N. W. Ry. Co. v. Smith,* 5 Rail. Cas., 717; Washb. Easem., 567-8; 9 How. (U. S.), 10, 27; 20 N. J. Eq., 530, 542); that, to entitle plaintiffs to relief, their damage must be peculiar to them, and the fact that they suffer in a greater degree than others is immaterial (*King v. London Dock Co.,* 5 Ad. & Ell., 173; *King v. Bristol Dock Co.,* 12 East, 429; 7 Cush., 255; 7 Met., 283; 6 id., 425; 2 Gray, 140; 7 id., 140; 8 Conn., 157, 167;

10 Cush., 390; 16 C. B., N. S., 237; 46 Barb., 561; 56 id., 480; 4 Wis., 454, 486; 17 id., 155; 30 id., 492; 2 id., 384; 34 id., 450; 18 N. Y., 155; 14 id., 506; 27 id., 611; 21 Conn., 326; 7 Rob., 523; 7 Cush., 255; 36 How. Pr., 233; *Winterbottom v. Earl of Derby*, 16 L. T., N. S., 771; *Ricket v. Metropolitan R'y Co.*, id., 542); that a mere apprehension of danger is not sufficient (2 Barb., 436; 8 Met., 8; 16 Ves., 342); and that plaintiffs should seek their remedy in a court of law. 21 Wis., 667; 6 Paige, 554; 1 id., 97; 9 Johns., 507; 1 Ves. Sr., 476; 11 Met., 521–6; *Earl of Ripon v. Hobart*, Cooper's Sel. Cas., 343; *Imperial Gas Co. v. Broadbent*, 7 H. L. Cases, 600; 11 id., 642.

For the respondent it was contended, that, as plaintiffs were all injured by a common nuisance, having a common effect, although varying in degree, they could properly join in a bill for an injunction (Wood's Law of Nuisances, 836; *Brady v. Weeks*, 3 Barb., 157; *Milhau v. Sharp*, 17 id., 435–6; *Wetmore v. Story*, 22 id., 414, 482; *Peck v. Elder*, 3 Sandf. S. C., 126; *Williams v. Smith*, 22 Wis., 594; *Rutherford v. Taylor*, 38 Mo., 315; *Huber v. Gazley*, 18 Ohio, 18; *Trustees of Watertown v. Cowen*, 4 Paige, 515: *Cady v. Conger*, 19 N. Y., 256; *Tallmadge v. East Riv. Bank*, 26 id., 105; *Fisher v. Beard*, 32 Iowa, 346); that, under the provisions of the revised statutes (ch. 47, sec. 5; Tay. Stats., 774, § 5), the owners of the front or eastern lots became, by the recording of the plat, the owners in fee of the soil of the alley back of their respective lots, and hence the true boundary of such lots was the center of "Darling Place;" that, after recording the plat and conveying the land upon either side, Darling had no further interest in such "Place," and hence defendants took nothing by their deeds (*Woodman v. Spencer*, 14 Am. Law Reg., N. S., 411, and cases cited; *Paul v. Carver*, 26 Pa. St., 223; *Cox v. Freedley*, 33 id., 124; R. S. 1858, ch. 47); that the vacation of such "Place" was void for want of a proper petition, the charter requiring two-thirds, while only one-half

the abutting owners had petitioned; and that the recording of the plat, and conveyances thereby, implied a covenant to the purchasers and their assigns that the public ways and grounds noted on such plat, should remain forever open to the public use, and neither could the proprietor withdraw his property from the public, nor could the latter change the use originally designed. 2 Smith's L. C., 208, notes to *Dovaston v. Payne;* 32 Iowa, 352; *Commonwealth v. Rush,* 14 Pa. St., 189; *Indianapolis v. Croas,* 7 Ind., 12; *New Orleans v. United States,* 10 Pet., 667, 720; *Brown v. Manning,* 6 Ohio, 298; *Le Clercq v. Gallipolis,* 7 id., 217; *Huber v. Gazley,* 18 id., 27; *Commonwealth v. Alburger,* 1 Whart., 485; *Rowan's Ex'rs v. Portland,* 8 B. Mon., 232; *Alves v. Henderson,* 16 id., 168; *Lawrence v. Mayor,* 2 Barb., 577; *Rutherford v. Taylor,* 38 Mo., 315; *Mayor v. Franklin,* 12 Ga., 243; *Godfrey v. Alton,* 12 Ill., 29; *Warren v. Mayor,* 22 Iowa, 351; *Milhau v. Sharp, supra; Commissioners v. Lathrop,* 9 Kan., 453; *Williams v. Smith,* 22 Wis., 594; *Barclay v. Howell's Lessee,* 6 Pet., 498; *White v. Flannigain,* 1 Md., 525; *Moale v. Mayor,* 5 id., 314; *State v. Wilkinson,* 2 Vt., 480; *Hannibal v. Draper,* 15 Mo., 634; *Baton Rouge v. Bird,* 21 La. An., 246; *Rung v. Shoneberger,* 2 Watts, 25; *Watertown v. Cowen,* 4 Paige, 510; *Cady v. Conger,* 19 N. Y., 256; *Abbott v. Mills,* 3 Vt., 521; *Wetmore v. Story,* 22 Barb., 414; *Wyman v. Mayor,* 11 Wend., 487; *State v. Catlin,* 3 Vt., 530; *Cincinnati v. White's Lessee,* 6 Pet., 431; *Sutherland v. Jackson,* 32 Me., 80; *Livingston v. Mayor,* 8 Wend., 85; *In re Lewis Street,* 2 id., 472; *In re 17th Street,* 1 id., 262; *In re Mercer Street,* 4 Cow., 543; *Augusta v. Perkins,* 3 B. Mon., 437.

LYON, J.    I. In *Kimball v. The City of Kenosha,* 4 Wis., 321, decided in 1855, it was held that the grantee of a lot bounded by a public street in a recorded town plat, whether the lot is designated in the conveyance thereof by its number on the plat or by some other appropriate description, takes to

the center of such street, subject only to the public easement, unless the street is expressly excluded from the grant by something appearing upon the plat, or by the terms of the conveyance.   This doctrine has since been repeatedly reäffirmed by this court, and is now too firmly established to be disputed or drawn in question.   *Goodall v. Milwaukee*, 5 Wis., 32; *Milwaukee v. Mil. & Beloit R. R. Co.*, 7 id., 85; *Ford v. The Chicago & N. W. Railway Co.*, 14 id., 609; *Weisbrod v. The Same*, 18 id., 36; *S. C.*, 20 id., 419; *S. C.*, 21 id., 602.

Manifestly this doctrine is applicable to all public ways, such as alleys, footways, and the like; and it was substantially so held in *Kimball v. Kenosha, supra.*

That "Darling Place" became a public way by the recording of the plat of the subdivision of block C, and subject to the rule laid down in the above cases, seems very clear.   We think that the alley in question also became thereby a public way, and hence, subject to the same rule of law.   It is specified in the certificate of the proprietors accompanying the plat, that such alley is for the accomodation of the front lots. This language is peculiar.   If it is restrictive, it certainly does not restrict the use of the alley to the *owners* of the front lots, but leaves the whole public who have occasion to go upon those lots, the right, as against the proprietors of the plat, of ingress thereto and egress therefrom, through the alley.   Because the whole public have lawful authority to pass through it *for particular purposes*, the alley is necessarily a public way, on the same principle that the "Place" is a public way because the whole public may lawfully pass through it *in a particular manner*, to wit, on foot.

The "Place" and alley being public ways and within the rule of *Kimball v. Kenosha* and the other cases cited above, we are next to inquire whether the plat, or the conveyances of the adjacent lots by the proprietors of the plat, expressly exclude the several grantees from the ownership of such "Place" and alley, subject to the public easement therein.   Certainly

no such exclusion is expressed by the plat., We agree with counsel for the plaintiffs, that the recording of the plat operated to place the owners of the front lots which Dr. Darling had previously conveyed by metes and bounds, on the same footing in respect to the alley and " Darling Place," as though such conveyances had been made after the plat was recorded. It is reasonable to infer that such was the intention of Dr. Darling and his grantees and coproprietors. If their intention was different, it should have been so clearly expressed on the face of the plat, that purchasers from Mason and *Sander* need not be misled by the plat to believe they were purchasing an interest in the public ways adjoining their lots.

Moreover, we fail to perceive any significance in the fact that in some conveyances of front lots made by Dr. Darling after the recording of the plat, the depth of the lots, as well as their numbers on the plat, is given. It seems obvious that if a lot is marked on the plat as being of a given depth exclusive of the street on which it abuts, there can be no difference between a conveyance thereof which describes it by its number alone, and one which adds to that description the depth of the lot as specified on the plat. Either is an appropriate description of the lot, and, in the absence of express exclusion, either conveys to the center of the adjoining street, subject only to the public easement.

In short, we fail to find any sufficient evidence that Dr. Darling retained or intended to retain any title whatever to " Darling Place " or the alley, after he conveyed the land abutting thereon.

We conclude that the fee of the " Place " and the alley, subject only to the public easement, is in the owners of the adjoining lots; that is, in the plaintiffs and the other owners of the front lots respectively, and in the defendants, who own all of the land abutting upon the " Place " on the west.

It remains to determine the limits or boundaries of the owners of each class. The plaintiffs claim that the owner of

each front lot, not only owns the fee of the alley in the rear of his lot, but also the fee to the center of "Darling Place." On the other hand, the defendants maintain that the owners of front lots take no title to any portion of "Darling Place," and, if they have any interest in the fee of the alley, that they take only to the center thereof; and that, by virtue of their ownership of the land abutting upon the "Place" on the west, and of the conveyance to them of Dr. Darling's interest in the ways, they, the defendants, are the owners in fee of the "Place" and at least the west half of the alley.

It is understood that, before the last mentioned conveyance was executed, Dr. Darling had conveyed the legal or equitable title, or both, to all of the front lots. The opinion has already been expressed, that, after doing so, and after having conveyed to the defendants the land abutting upon "Darling Place" on the west, Dr. Darling had no remaining interest in either the "Place" or alley, and, as a matter of course, could convey no title thereto to the defendants. Hence, the respective interests of the defendants and of the owners of the front lots, in the fee of these two ways, must be determined by the general rules of law governing the rights of the owners of lots in recorded town plats, in the soil or fee of public ways adjoining such lots.

*Mariner v. Schulte*, 13 Wis., 692, was a case where two public ways in a recorded town plat, one by land and the other by water, were located side by side, with no space between them. The controversy was for land made by filling a portion of the way by water. It was held that the boundary between opposite lots, abutting respectively on each way, was the line between the two ways, and that the owner of each lot took the fee to that line by virtue of his conveyance of the lot, subject only to the public easement.

This case, in all of its leading features, is very similar to that of *Mariner v. Schulte*. And no good reason is perceived why the rule there adopted should not be applied to it. Dr.

Darling's homestead adjoined "Darling Place" on the west; and it is reasonable to suppose he intended that he and his grantees should have access therefrom, across the "Place," to the stores or other buildings on the front lots, and that such right of access should not be destroyed by the termination of the public easement over the place. On the other hand, it is also reasonable to suppose Dr. Darling intended that the owners of the front lots should, in any contingency, have access to the "Place" across the alley. We have concluded to follow *Mariner v. Schulte* so far as to hold that the owners of the front lots take the fee of the whole alley *at least*, by virtue of their conveyance, each owner taking, in severalty, the portion of the same lying in the rear of his lot. Whether such owners also take the fee of any portion of the "Place," is a question not necessary to be here determined, and upon which we express no opinion.

It may be observed in this connection, that the plat, and the conveyance of lots by the proprietors with reference to it, constitute a valid dedication to the public use, of the streets and ways marked on the plat, binding upon such proprietors, without any formal acceptance of such dedication by the public authorities. *Williams v. Smith*, 22 Wis., 594; R. S., ch. 47, sec. 5 (Tay. Stats., 774, § 5). We do not say, however, that such acceptance is not necessary to render the municipality within which such street or way is located, liable for damages resulting from the same being out of repair. We leave that proposition undecided.

II. Having determined that the defendants have no title to the alley, we are prepared to pass upon the validity of the proceedings by which the common council of Fond du Lac, on the petition of the defendants alone, attempted to vacate "Darling Place," and thus to destroy or surrender the public easement therein.

The power of the common council in that behalf is given by the charter of the city, as follows: "Upon petition in writ-

ing of two-thirds of the owners of lots on any street, alley or highway in said city, the common council shall have power to discontinue or vacate such street, alley or highway, or any part thereof, upon the vote of two-thirds of all the aldermen elect, as provided in this chapter." P. & L. Laws of 1868, ch. 59, sub-ch. XV, sec. 1 (p. 135).

It is too plain for argument or controversy, that the petition specified in the charter is essential to the jurisdiction of the council. Wanting the required petition, all ordinances or resolutions of the council by which it is attempted to vacate public ways, are absolutely void.

For the purposes of this case, we will assume the charter to mean that the petition of the owners of two-thirds of the frontage on the street proposed to be vacated is sufficient to give the council jurisdiction of the matter, and not that the petition of a majority of such owners, by count, without regard to the extent of their ownership, is necessarily requisite for that purpose.

Upon the construction of the charter thus assumed (which is the most favorable to the defendants), the petition to vacate "Darling Place" conferred no jurisdiction upon the council, because the defendants, who were the only petitioners therefor, were not the owners of two-thirds of the frontage abutting upon said "Place," but only of one-half thereof. Hence, the proceeding of the council in that behalf are null and void, and "Darling Place" still a public footway, which the defendants have no lawful authority to close up or obstruct.

III. The plaintiffs being the owners in severalty of portions of the alley, and the defendants being about to close up "Darling Place" by placing a permanent obstruction therein, the next question is, whether an injunction may properly be granted at the suit of the plaintiffs, or of one or more of them, to restrain the defendants from so doing.

If the plaintiffs will suffer private and special injury by the closing up of "Darling Place" — injury not common to the

whole public,— they can maintain an action in equity to prevent the threatened injury.   And it is the settled law of this state, that an obstruction which prevents the lawful use of a public street or highway, besides being a public nuisance, is a special injury to the adjoining lot-owners, and, when such an obstruction is threatened, they may proceed in a court of equity to prevent it.   *Walker v. Shepardson,* 2 Wis., 384; *Barnes v. Racine,* 4 id., 454; *Williams v. Smith,* 22 id., 594.

It is objected that the special injury which the plaintiffs will suffer if "Darling Place" be closed up as threatened, is not sufficiently stated in the complaint.   The averment is, that the threatened acts, if executed, "will greatly diminish the value of said lots and buildings of these plaintiffs, and will greatly increase the risk and liability from fire to said buildings, and will otherwise greatly injure the said property of these plaintiffs."   This is as specific as the averment of special injury in *Walker v. Shepardson, supra,* in which case the same objection was taken to the bill by demurrer.   But the averment was held sufficient, and the demurrer overruled.   In the opinion of the court, prepared by Chief Justice WHITON, we find the following language:   "Objection is made to the bill, that it does not state how the complainant's property will be injured.   But we think that the charge made in the bill, that the defendant was placing obstructions in the bed of the river in front of the complainant's lots and docks, thereby blocking up and obstructing the channel of the stream, not only shows that special damage, quite distinct from that which the public will suffer, will be sustained by the complainant, if the defendant is permitted to complete the erection of the nuisance, but indicates also how the injury will be accomplished."   (p. 396.)   On the authority of that case, it must be held that the complaint contains a sufficient averment that if the acts threatened by the defendants are executed, private and special injury, distinct from that which

the public at large will suffer thereby, will result to the plaintiffs severally.

IV.   But it is further argued by the learned counsel for the defendants, that because the threatened injury will not affect the plaintiffs jointly, but only severally, the plaintiffs cannot properly join in an action to restrain the defendants from committing it.

Since we hold that " Darling Place " is still a public way, which the defendants cannot lawfully obstruct, and that an action may be maintained by an owner of a lot abutting on it, to prevent the defendants from obstructing it as threatened, the question whether there is a misjoinder of plaintiffs is of very little importance.   It is sufficient to say that a similar objection was ruled against the defendants in *Barnes v. Racine, supra.*   In that case, each plaintiff held his property affected by the nuisance complained of, in severalty.   One used his property for wharf purposes; another for operating a steam mill; another for warehouse purposes; and still others as yards for ship-building.   The court said:   " Nor do we see any objection to such persons joining in a suit as parties complainants.   As the erection of the nuisance would cause private and special damage to each of the complainants, they have a common right to prevent its erection, or to abate it after it is built." (p. 466.)   See also *Williams v Smith, supra,* where (although the fact does not distinctly appear in the report of the case) the individual plaintiffs had no joint interest in the lots affected by the threatened nuisance, but each owned one of said lots in severalty.

Some other questions were discussed by counsel on the argument; but they are unimportant, if the views above expressed are correct.   We do not deem it necessary to consider those questions.

It is freely conceded that the learned counsel for the defendants have cited many cases in which other courts have held doctrines opposed to some of our conclusions.   But we

have followed former adjudications of this court, which have become rules of property, and which we are not at liberty to overrule or disturb.

*By the Court.* — The order of the circuit court denying the motion to dissolve the injunction is affirmed.