JAMES A. BOTTONI, JR., Corporation Counsel, Washington County
You inquire whether sec. 236.36, Stats., permits the replat of a part of a previously recorded subdivision plat, without circuit court action, where the only areas dedicated to the public in that portion of *Page 211 
the original subdivision being replatted, were previously vacated under the provisions of sec. 66.296, Stats.
"Replat" is defined in sec. 236.02 (13), Stats., as follows:
 "236.02 (13) `Replat' is the process of changing, or the map or plat which changes, the boundaries of a recorded subdivision plat or part thereof. The legal dividing of a large block, lot or outlot within a recorded subdivision plat without changing exterior boundaries of said block, lot or outlot is not a replat."
Section 236.36, Stats., provides as follows:
 "236.36 Replats. Except as provided in s. 70.27
(1), replat of all or any part of a recorded subdivision, if it alters areas dedicated to the public, may not be made or recorded except after proper court action, in the county in which the subdivision is located, has been taken to vacate the original plat or the specific part thereof."
Section 236.40, Stats., et seq., provides a procedure whereby all or part of a recorded subdivision plat may be vacated or altered upon application to the circuit court for the county in which the subdivision is located.
I have previously indicated that sec. 236.36, Stats., clearly provides that if a replat of all or part of a recorded subdivision does not alter areas dedicated to the public, it may be made and recorded without the necessity of pursuing the court procedure provided for in sec. 236.40, Stats., et seq., 58 OAG 146 (1969). Obviously, as indicated in that opinion, if the proposed replat alters areas dedicated to the public, proper court proceedings must be taken to vacate or alter the original plat, or the specific part thereof, before the replat may be made or recorded. See sec. 236.43, Stats., regarding court vacation or alteration of platted areas dedicated to the public. The answer to your question, therefore, turns on whether a street properly discontinued under the provisions of sec. 66.296, Stats., continues to be "dedicated to the public" as that phrase is used in sec. 236.36, Stats.
The effect of the recording of a subdivision plat, in reference to the dedications to the public made therein, is set forth in sec. 236.29 (1), Stats., as follows: *Page 212 
 "236.29 (1) Effect of recording on dedications. When any plat is certified, signed, acknowledged and recorded as prescribed in this chapter, every donation or grant to the public or any person, society or corporation marked or noted as such on said plat shall be deemed a sufficient conveyance to vest the fee simple of all parcels of land so marked or noted, and shall be considered a general warranty against such donors, their heirs and assigns to the said donees for their use for the purposes therein expressed and no other; and the land intended for the streets, alleys, ways, commons or other public uses as designated on said plat shall be held by the town, city or village in which such plat is situated in trust to and for such uses and purposes."
In Kimball v. City of Kenosha (1855), 4 Wis. 321*, our court considered the effect of the discontinuance of a public street which had been previously laid out, surveyed, mapped and dedicated as part of a recorded plat of the village of Southport (City of Kenosha), which was subject to the provisions of a statute which read essentially as sec. 236.29, Stats., presently reads. The court concluded that although the statute passed a trust estate in the land designated as streets to the corporation authorities, where such authorities discharged and abandoned the trust created by the act of recording the plat, by discontinuing and vacating such public streets, they were divested of all estate in the premises. It is there stated, at page 332*:
 ". . . The public authorities have all the control over the streets which the statute grants to them, so long as the streets are continued as such; and when they cease to be such, are vacated or abandoned, the rights of the public therein are extinguished, and those of the individual owner may be resumed." (Emphasis added.)
See also sec. 80.32 (3), Stats., which provides for a reversion of title upon the discontinuance of any highway.
It is therefore evident that the discontinuance of a public street, under a statute such as sec. 66.296, Stats., abolishes that street altogether. See Huening v. Shenkenberg (1932),208 Wis. 177, 179, 242 N.W. 552. Such a discontinued and vacated street hardly can continue to be considered as "dedicated to the public," as that phrase is used in sec. 236.36, Stats. *Page 213 
Further, a comparison of the various street vacation provisions contained in sec. 66.296, Stats., with those in sec. 236.40, Stats., et seq, discloses that both statutory procedures establish requirements for notification of and effective participation by affected property owners and require approval by the appropriate municipal governing body as a condition of such discontinuance and vacation. Once a street has been discontinued and vacated under sec. 66.296, Stats., no meaningful purpose is served by requiring what is essentially a repetition of the vacation procedure, in another but similar form, under sec.236.36, Stats.
In light of the foregoing, it is my opinion that sec. 236.36, Stats., permits the replat of a part of a previously recorded subdivision plat, without circuit court action, where the only areas dedicated to the public in that portion of the original subdivision being replatted, were previously fully and properly vacated under the provisions of sec. 66.296, Stats.
RWW:JCM